CAUSE NO. **2 0 0 6 = 1 4 6 0 3**

| | |
|---|---|
| THOMAS INDUSTRIAL NETWORK, INC. and PRODUCT INFORMATION NETWORK, INC. <br><br> Plaintiffs, <br><br> vs. <br><br> PEASE MEDIA, LTD., d/b/a TOPSPOT INTERNET MARKETING SOLUTIONS, RICK PEASE MEDIA, L.L.C., RICHARD PEASE, JEFF MONTGOMERY, DAVID UNDERWOOD and ANITA PEREZ <br><br> Defendants. | § § § § § § § § § § § § § § § § |

IN THE DISTRICT COURT OF

HARRIS COUNTY, TEXAS

/25 JUDICIAL DISTRICT

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE COURT:

Plaintiffs Thomas Industrial Network, Inc. ("Thomas") and Product Information Network, Inc. ("PINI") file this their Original Petition complaining of Pease Media, Ltd., d/b/a TopSpot Internet Marketing Solutions, Rick Pease Media, L.L.C., Richard Pease, Jeff Montgomery, David Underwood, and Anita Perez (collectively the "Defendants"), and for cause of action show as follows:

### DISCOVERY PLAN LEVEL

1.    Plaintiffs intend to conduct discovery under Level 3 of Texas Rule of Civil Procedure 190.

### JURISDICTION AND VENUE

2.    Venue is proper in this Court pursuant to TEX. CIV. PRAC. & REM. CODE §15.002. This Court has subject matter jurisdiction of this matter.


EXHIBIT
A

## PARTIES TO THE ACTION

3.    Plaintiff Thomas is a corporation duly organized and existing under the laws of the State of Delaware, and with its principal place of business in New York, New York.

4.    Plaintiff PINI is a corporation duly organized and existing under the laws of the State of Delaware and with its principal place of business in New York, New York.

5.    Defendant Pease Media, Ltd. ("Pease Media") is a domestic limited partnership organized under the laws of the State of Texas.  Upon information and belief, Pease Media currently does business under the name "TopSpot Internet Marketing Solutions" or "TopSpot." Pease Media may be served with process by and through its registered agent for service of process, Richard Pease, at 4545 Post Oak Place, Suite 120, Houston, Texas 77027, or such other location where he may lawfully be served.

6.    Defendant Rick Pease Media, L.L.C. ("Pease LLC") is a limited liability company duly organized and existing under the laws of the State of Texas.  Pease LLC is the general partner of Pease Media and may be served with process by and through its registered agent for service of process, Richard Pease, at 4545 Post Oak Place, Suite 120, Houston, Texas 77027, or such other location where he may lawfully be served.

7.    Defendant Richard Pease ("Pease") is a resident of the state of Texas and may be served with process at 4545 Post Oak Place, Suite 120, Houston, Texas 77027, or such other location where he may lawfully be served.

8.    Defendant Jeff Montgomery ("Montgomery") is a resident of the state of Texas and may be served with process at 4545 Post Oak Place, Suite 120, Houston, Texas 77027, or such other location where he may lawfully be served.

9.     Defendant David Underwood ("Underwood") is a resident of the state of Texas and may be served with process at 4545 Post Oak Place, Suite 120, Houston, Texas 77027, or such other location where he may lawfully be served.

10.     Defendant Anita Perez ("Perez") is a resident of the state of Texas and may be served with process at 4545 Post Oak Place, Suite 120, Houston, Texas 77027, or such other location where she may lawfully be served.

## FACTUAL BACKGROUND

The Thomas Register

11.     Thomas is a publisher of multimedia business publications bearing the Thomas Marks, including Thomas Register, Thomas Regional, Thomas Register Regional, Thomasnet, PartSpec, PlantSpec, CADBlocks, Catalog Navigator, Custom Quotes and CADRegister. Thomas publishes, *inter alia*, Thomas Register of American Manufacturers, a comprehensive annual printed directory containing listings, and in some cases descriptions, of manufacturing and other industrial products, services, companies and executives (which is also offered, as Thomas Register, in CD-ROM and DVD versions), and Thomas Register on the Internet® (d/b/a Thomas Register®), the online version of the directory (the "Thomas Register") and Thomasnet.com, an online directory/search engine providing access to Thomas Online publications. All versions of the directory are supported principally through revenues from the sale of business-to-business advertising to manufacturing and other industrial companies.

12.     The print version of Thomas Register is a 16-volume work, revised and published annually, that lists more than 190,000 American and Canadian manufacturing and other industrial companies selling millions of products. The work is organized both alphabetically by the name of the company and under an elaborate series of product headings. The company

- 3 -

listings contain narrative text descriptions of each company as well as the company's address and telephone number. The product listings contain a narrative description of the products sold by each company and refer users to detailed catalog information contained in other volumes of the work. The print edition of Thomas Register is sold to customers by subscription. Nonetheless, most of the revenues which Thomas receives from it are produced by business-to-business advertising placed in it by listed companies.

      13.    The CD-ROM and DVD editions of the Thomas Register and the CD-ROM edition of Thomas Regional are likewise revised and published annually and contain much the same information as is in the print version but are compatible with networks and enhanced by a search function that allows users to access the information more quickly from their desktop computers. These versions are also sold by subscription and contain advertising by the listed companies that provides the major source of the revenue they generate.

      14.    The online version of Thomas Register, ThomasRegister.com, Thomas Regional, Thomasregional.com and Thomasnet.com are free services, supported by advertising revenues that contain many of the same features as the other Thomas Register versions, including the company profiles and product headings. Besides quick and easy searching, its enhanced features include more frequent updates, links to many suppliers' online catalogs with detailed buying and specifying information, the ability for users to send e-mails directly to listed companies with orders or requests for quotes, downloadable drawings for numerous products and "Order Online," "Catalog Navigator" and website services providing content management and production.

      15.    Thomas has a business and contractual relationship with each Thomas Register advertiser.

16. Within the manufacturing and industrial sector, Thomas Register, Thomas Regional and Thomasnet are universally identified with Thomas and vice versa.

Thomas Advertising- Sales and Pease Media's Role

17. Under license from Thomas, PINI is responsible for soliciting and selling advertising nationwide for all versions of the Thomas multimedia business products. To accomplish this, PINI contracts through licensing agreements with independent sales representatives, called "Seniors," to carry out the actual solicitation of orders for sales in various regions of the country.

18. The Senior is compensated by PINI on a commission basis. Each Senior is assigned a territory to cover, and typically the Senior employs or contracts with salespeople and others to assist in the work. The Senior is provided with the contact names and customer profiles of existing and previous Thomas advertisers, whose contractual and business relationships with PINI and Thomas predated the Senior's license agreement with PINI, and also with leads generated by Thomas regarding potential future clients. Using the Thomas name, resources, business reputation, and other PINI and Thomas proprietary information, Seniors may identify and obtain additional Thomas advertisers.

19. Once solicited by the Senior, orders for such advertising are sent to Thomas in New York, New York for approval or rejection.

Pease Media Breaches The License Agreement By Competing With Thomas

20. In December 2003, PINI and Pease Media executed a License Agreement under which Pease Media agreed to serve as a Senior for PINI. A true and correct copy of the License Agreement is attached hereto as Exhibit A and incorporated by reference. Pease Media has held a nonexclusive license from PINI to solicit advertising orders for Thomas publications for many

years. Upon information and belief, Pease Media associated with Pease, Montgomery, Underwood, and Perez to assist Pease Media in fulfilling its contractual obligations to PINI and Thomas.

21. Although the License Agreement provided for Pease Media and its staff to pursue other occupational activities and work while providing services for PINI and Thomas, the License Agreement provided that Pease Media could not pursue any work that conflicted with the services being provided for PINI and Thomas. In that regard, Paragraph 7 of the License Agreement states:

> Licensee [Pease Media] and its contractors, consultants, agents and employees may pursue any other occupation and engage in any other work, business or activity which does not conflict with the services to be rendered under this Agreement or which does not utilize or gain advantage from 'trade secret' information of PINI and/or Publishers [Thomas] in the pursuit of such work, business or activity.

Exh. A.¶7.

22. Notwithstanding its contractual obligations, Pease Media did engage in actions that conflicted with the services being rendered to PINI under the License Agreement.

23. Specifically, during 2004, Pease Media began to urge and advise existing Thomas clients to refrain from continuing to advertise through Thomas -- or severely reduce advertising with Thomas -- and to instead advertise through a pay-per-click program.

24. Upon information and belief, Pease Media, while doing business under the name TopSpot, offered internet marketing consulting services through, among other things, pay-per-click advertising management on Google and Overture. Through pay-per-click advertising, a fee is charged by a search engine company based upon the number of visits or hits to the advertiser's website through the search engine's services. Upon information and belief, Pease Media receives

compensation from set up, management, and consulting fees as well as additional charges based upon, among other things, the fee charged by the search engine.

25.     Upon information and belief, as a result of Pease Media's solicitations for pay-per-click advertising programs while Pease Media was still a Senior for Thomas, many Thomas customers -- at Pease Media's urging -- ceased advertising with Thomas or substantially reduced their Thomas advertising and instead advertised through pay-per-click programs managed by Pease Media. During the term of the License Agreement, Pease Media misled Thomas about its pay-per-click marketing activities.

26.     Upon information and belief, Pease, Montgomery, Underwood and Perez urged and advised Thomas clients to refrain from continuing to advertise through Thomas or to drastically reduce their advertising with Thomas -- in order to increase his or her own personal compensation. Indeed, Pease, Montgomery, Underwood and Perez stood to profit personally from their wrongful scheme as each would individually and personally profit by shifting amounts Thomas customers spent on advertising from Thomas to the TopSpot pay-per-click programs.

27.     Upon information and belief, Pease, Montgomery, Underwood, and Perez caused and induced Pease Media to breach its obligations to PINI and Thomas by urging customers to cease advertising with Thomas or substantially reduce their Thomas advertising and instead advertise through pay-per-click programs managed by Pease Media.

Pease Media Breaches The License Agreement By Misusing Thomas' Trade Secret Information

28.     In connection with its License Agreement with Pease Media, in order to help Pease Media solicit advertising for Thomas, PINI provided Pease Media with trade secret information, including market research information. In the License Agreement, Pease Media

- 7 -

agreed that such information was trade secret information proprietary to PINI and Thomas.

Paragraph 19 of the License Agreement reads, in part, as follows:

> Licensee [Pease Media] shall not disclose, publish, proliferate or copy or allow to be disclosed, published, proliferated or copied any such 'trade secret' information except as specifically authorized hereunder and except as is reasonably necessary in furtherance of Licensee's duties under this Agreement. Licensee will hold all such 'trade secret' information in confidence and shall take all reasonable measures to ensure that no unauthorized person shall have access to said 'trade secret' information.

Exh.A.¶19.

29.     However, despite promising to keep PINI and Thomas' trade secret information confidential and to use it only to further Thomas' business interests, Pease Media used PINI's and Thomas' information, including market research in promotional materials for TopSpot, in an effort to promote Pease Media's competing business and also to convince existing Thomas advertisers to withdraw their business from Thomas and advertise through pay-per-click programs.

30.     Upon information and belief, Pease, Montgomery, Underwood, and Perez caused and induced Pease Media to breach its obligations to PINI and Thomas by misusing PINI and Thomas' proprietary information.

Pease Media Breaches The Contract By Refusing To Repay Advances

31.     The License Agreement also provided that PINI may make advances to Pease Media, to be charged against and deducted from Pease Media commissions. If advances exceeded commissions, Pease Media was required to repay the advance. Paragraph 17 of the contract states as follows:

> PINI, at its discretion, may make advances to the Licensee [Pease Media] from time to time. Such advances shall be charged against commissions allocated and will be deducted from any payment that

- 8 -

> might result from the annual settlement described in paragraph
> 15(d) above. If advances exceed commissions in any accounting
> period, Licensee shall promptly refund the excess to PINI or
> provide PINI at its request with an acknowledgement of the
> amount owed.

Exh.A.¶17.

32.     During 2004, PINI did in fact give Pease Media advances under the parties'
License Agreement of more than $600,000. After subtracting Pease Media's commissions for the
same period, at least $225,384.10 remains outstanding. Exh.B (Commission Statement).
Although PINI had requested that Pease Media refund the excess advances as required by the
parties' License Agreement, Pease Media has refused to do so. A true and correct copy of the
Commission Statement is attached hereto as Exhibit B and incorporated by reference.

33.     In accordance with the terms of the contract, PINI terminated its License
Agreement with Pease Media by letter dated November 24, 2004.

### FIRST CAUSE OF ACTION

#### (Breach of Contract)

34.     Plaintiffs repeat and reallege each and every allegation pleaded in paragraphs 1
through 33, inclusive, set forth above, as if the same were set forth fully at length herein.

35.     PINI and Pease Media entered into a contractual License Agreement, under which
Pease Media agreed to solicit advertising for publications of Plaintiff Thomas.

36.     The License Agreement barred Pease Media from engaging in work, businesses or
activities which conflicted with the services being rendered by Pease Media under the License
Agreement - i.e. the solicitation of advertising for Thomas.

37.     Pease Media breached the License Agreement by urging and soliciting Thomas
customers to cease advertising with Thomas or to substantially reduce advertising with Thomas
and instead to advertise through pay-per-click programs.

- 9 -

38.     As a direct and proximate result of the breach by Pease Media, Plaintiffs have
been damaged in an amount in excess of the minimum jurisdictional limits of this Court.

## SECOND CAUSE OF ACTION

### (Breach of Contract)

39.     Plaintiffs repeat and reallege each and every allegation pleaded in paragraphs 1
through 38, inclusive, set forth above, as if the same were set forth fully at length herein.

40.     PINI and Pease Media entered into a contractual License Agreement, under which
Pease Media agreed to solicit advertising for publications of Plaintiff Thomas.

41.     Under the License Agreement, Pease Media received considerable confidential
and proprietary information from PINI regarding Thomas' business. In the Agreement, Pease
Media acknowledged and agreed that such information constituted trade secrets of PINI and
Thomas.

42.     Pease Media contracted to keep confidential Plaintiffs' trade secret information,
acknowledged that it remained the property of Plaintiffs and agreed to use it solely and
exclusively in furtherance of Plaintiffs' business. The License Agreement provided that Pease
Media's contractual obligations regarding Plaintiffs' trade secret information would survive
termination of the contractual relationship between Pease Media and PINI.

43.     However, Pease Media used Plaintiffs' trade secret information to solicit and
obtain customers for its competing internet business, and to convince longstanding customers of
Plaintiffs to cease advertising with Thomas or substantially reduce their advertising with
Thomas. Among other uses, Pease Media used PINI's and Thomas' marketing research
information in the promotional materials for its competing business.

44.     Pease Media has retained Plaintiffs' trade secret information and used it to further its own business interests, in competition with Plaintiffs' business interests, and in contravention of the parties' License Agreement.

45.     By misusing Plaintiffs' trade secret information outside the limited license granted in the License Agreement, Pease Media has breached the parties' License Agreement.

46.     As a direct and proximate result of the breach by Pease Media, Plaintiffs have been damaged in an amount in excess of the minimum jurisdictional limits of this Court.

### THIRD CAUSE OF ACTION

### (Tortious Interference with Contract)

47.     Plaintiffs repeat and reallege each and every allegation pleaded in paragraphs 1 through 46, inclusive, set forth above, as if the same were set forth fully at length herein.

48.     PINI and Pease Media entered into a contractual License Agreement, under which Pease Media agreed to solicit advertising for publications of Thomas.

49.     The License Agreement prevented Pease Media from engaging in any competing business that conflicted with the business interests of Plaintiffs, obligated it to keep confidential Plaintiffs' trade secret information and use it only to further Plaintiffs' business interests.

50.     The License Agreement also required Pease Media to repay any amount of advances that exceeded commissions in a given accounting period.

51.     Pease, Montgomery, Underwood, and Perez knew of the contractual relationship between Pease Media and PINI, for the benefit of Thomas.

52.     Pease, Montgomery, Underwood, and Perez intentionally procured Pease Media's breach of its valid and existing contract with PINI, by inducing Pease Media to misappropriate

- 11 -

Thomas's trade secret information, pursuing business activities in unfair competition with Plaintiffs and causing Pease Media to breach its duty of loyalty to Plaintiffs.

53.     Richard Pease intentionally induced Pease Media to breach its valid and existing contract with PINI, by inducing Peace Media to convert advances made under the License Agreement and/or converting the advances for himself.

54.     Upon information and belief, Pease, Montgomery, Underwood, and Perez induced Pease Media to breach the License Agreement by wrongfully diverting Plaintiffs' business to Pease Media's pay-per-click advertising business in order to increase his or her personal compensation.

55.     Upon information belief, Pease induced Pease Media to breach the License Agreement and to convert advances owed by Pease Media to PINI in order to wrongfully increase his own personal compensation from Pease Media.

56.     By acting in a manner which increased each other's personal compensation, but which subjected Pease Media to liability, Pease, Montgomery, Underwood, and Perez were acting for his or her own personal benefit and not acting for the benefit of Pease Media when they induced Pease Media to breach its contractual relationship with PINI for the benefit of Thomas.

57.     Pease, Montgomery, Underwood, and Perez conspired to procure Pease Media's breach of its valid and existing contract with PINI, by misappropriating trade secret information, pursuing business activities in unfair competition with Plaintiffs to their detriment and causing Pease Media to breach its duty of loyalty to Plaintiffs.

58.     Pease, Montgomery, Underwood, and Perez took one or more overt acts in furtherance of their conspiracy to procure Pease Media's breach of its valid and existing contract

with PINI, by misappropriating trade secret information and pursuing business activities in unfair competition with Plaintiffs to their detriment and causing Pease Media to breach its duty of loyalty to Plaintiffs.

59.     As a direct and proximate result of the actions and inactions of Pease, Montgomery, Underwood, and Perez as described herein, Plaintiffs have suffered damages in excess of the minimum jurisdictional limit of this Court.

## FOURTH CAUSE OF ACTION

### (Breach of Fiduciary Duty)

60.     Plaintiffs repeat and reallege each and every allegation pleaded in paragraphs 1 through 59, inclusive, set forth above, as if the same were set forth fully at length herein.

61.     PINI and Pease Media entered into a contractual License Agreement, under which Pease Media agreed to solicit advertising for publications of Thomas.

62.     Pease Media was an independent contractor of PINI and has held a nonexclusive license from PINI to solicit advertising orders for Thomas publications for many years.

63.     As an independent contractor engaged in the solicitation of advertising for Plaintiffs, Pease Media owed Plaintiffs a fiduciary duty not to engage in competing business interests while working as an independent contractor for Plaintiffs.

64.     Richard Pease is an officer, director and majority shareholder of Pease Media. Pease had a fiduciary duty not to cause Pease Media to engage in competing business interests while working as an independent contractor for Plaintiffs.

65.     Pease, Montgomery, Underwood and Perez, work as salespeople for Pease Media. Peace, Montgomery, Underwood and Perez had a fiduciary duty not to cause Pease Media to engage in competing business interests while working as an independent contractor for Plaintiffs.

66. During its contractual relationship with Plaintiffs, through its agents Pease, Montgomery, Underwood, and Perez, Pease Media actively engaged in competing business ventures to the detriment of Plaintiffs. Pease Media actively disparaged Plaintiffs' products to its longstanding customers, and solicited them to reduce or discontinue their business dealings with Plaintiffs and advertise through pay-per-click programs managed by Pease Media.

67. Upon information and belief, Pease Media successfully solicited Thomas customers to discontinue or substantially reduce advertising with Plaintiffs and advertise through pay-per-click programs instead.

68. By these actions, Defendants breached their fiduciary duty to Plaintiffs.

69. As a direct and proximate result of Defendants' actions as described herein, Plaintiffs have been damaged in an amount in excess of the minimum jurisdictional limit of this Court.

## FIFTH CAUSE OF ACTION

### (Tortious Interference with Contract)

70. Plaintiffs repeat and reallege each and every allegation pleaded in paragraphs 1 through 69, inclusive, set forth above, as if the same were set forth fully at length herein.

71. PINI and Pease Media entered into a contractual License Agreement, under which Pease Media agreed to solicit advertising for publications of Thomas.

72. The License Agreement prevented Pease Media from engaging in any competing business that conflicted with the business interests of Plaintiffs, obligated it to keep confidential Plaintiffs' trade secret information and use it only to further Plaintiffs' business interests, and required it to repay any amount of advances that exceeded commissions in a given accounting period.

- 14 -

73.     Pease, Montgomery, Underwood, and Perez knew of the contractual relationship between Pease Media and PINI, for the benefit of Thomas.

74.     Pease, Montgomery, Underwood, and Perez interfered with that contractual relationship and caused Pease Media to breach that License Agreement by using the trade secret information and business reputation of Plaintiffs to solicit Plaintiffs' customers to reduce or discontinue their business relationship with Plaintiffs and advertise instead through pay-per-click programs, by misappropriating trade secret information, by pursuing business activities in unfair competition with Plaintiffs to their detriment and causing Pease Media to breach its duty of loyalty to Plaintiffs. These actions caused Pease Media to breach its contractual relationship with PINI for the benefit of Thomas.

75.     Pease interfered with the License Agreement by causing Pease Media to convert advances made to it and/or converting the advances for himself.

76.     Upon information and belief, Pease, Montgomery, Underwood, and Perez interfered with the License Agreement by wrongfully diverting Plaintiffs' business to Pease Media's pay-per-click advertising business in order to wrongfully increase his or her own personal compensation.

77.     Upon information belief, Pease interfered with the License Agreement to convert advances owed by Pease Media to PINI in order to wrongfully increase his or her own personal compensation.

78.     By acting in a manner which increased each other's personal compensation, but which subjected Pease Media to liability, Pease, Montgomery, Underwood, and Perez were acting for his or her own personal benefit and not acting for the benefit of Pease Media when

they caused Pease Media to breach its contractual relationship with PINI for the benefit of Thomas.

79.     Pease, Montgomery, Underwood, and Perez intentionally, maliciously, and using improper means, caused Pease Media to breach its contract with PINI.

80.     Plaintiffs have been damaged, in an amount in excess of the minimum jurisdictional limit of this court as a direct and proximate result of the tortious interference of Pease, Montgomery, Underwood, and Perez.

### AS AND FOR SIXTH CAUSE OF ACTION

### (Conspiracy to Breach Fiduciary Duty)

81.     Plaintiffs repeat and reallege each and every allegation pleaded in paragraphs 1 through 80, inclusive, set forth above, as if the same were set forth fully at length herein.

82.     PINI and Pease Media entered into a contractual License Agreement, under which Pease Media agreed to solicit advertising for publications of Thomas.

83.     Pease Media was an independent contractor of PINI and has held a nonexclusive license from PINI to solicit advertising orders for Thomas publications for many years.

84.     As an independent contractor engaged in the solicitation of advertising for Plaintiffs, Pease Media owed Plaintiffs a fiduciary duty not to engage in competing business interests while working as an independent contractor and agent for Plaintiffs.

85.     Defendants conspired to accomplish the unlawful objective of breaching Pease Media's fiduciary duty to Plaintiffs.

86.     One or more of the Defendants committed an unlawful, overt act in furtherance of the conspiracy.

- 16 -

87.     As a direct and proximate result of the Defendants' conspiracy, Plaintiffs have suffered damages in an amount in excess of the minimum jurisdictional limit of this Court.

## SEVENTH CAUSE OF ACTION

### (Breach of Contract)

88.     Plaintiffs repeat and reallege each and every allegation pleaded in paragraphs 1 through 87, inclusive, set forth above, as if the same were set forth fully at length herein.

89.     PINI and Pease Media entered into a contractual License Agreement, under which Pease Media agreed to solicit advertising for publications of Thomas.

90.     Under the License Agreement, PINI was permitted and in fact did provide Pease Media with substantial advances in funds, against which Pease Media's commissions were to be credited. If at the end of any accounting period advances exceeded commissions, PINI had the right to demand immediate repayment of the excess advances.

91.     In 2004, Pease Media's advances exceeded its commissions by at least $225,384.10.

92.     PINI timely demanded repayment of the excess advances. Pease Media refused and breached its contractual License Agreement with PINI.

93.     Plaintiffs have been damaged as a direct and proximate result of this breach in an amount in excess of the minimum jurisdictional limit of this Court.

## EIGHTH CAUSE OF ACTION

### (Conversion)

94.     Plaintiffs repeat and reallege each and every allegation pleaded in paragraphs 1 through 93, inclusive, set forth above, as if the same were set forth fully at length herein.

95.    PINI and Pease Media entered into a contractual License Agreement, under which Pease Media agreed to solicit advertising for publications of Thomas.

96.    Under the License Agreement, PINI was permitted and in fact did provide Pease Media with substantial advances in funds, against which Pease Media's commissions were to be credited. If at the end of any accounting period advances exceeded commissions, PINI had the right to demand immediate repayment of the excess advances.

97.    In 2004, Pease Media's advances exceeded its commissions by at least $225,384.10. PINI timely demanded repayment of the excess advances.

98.    PINI has legal title to the amounts refunded, and at the end of the accounting period, was entitled to immediate possession of those funds.

99.    Pease Media refused to repay the advances, thereby unlawfully converting the funds.

100.    At all times relevant to this lawsuit, Pease was an officer, director, and majority shareholder of Pease Media.

101.    Pease Media and/or Pease unlawfully converted funds to which PINI has legal title and the right to immediate possession at the direction and through the actions of Pease.

102.    Plaintiffs have been damaged in an amount in excess of the minimum jurisdictional limit of this Court as a direct and proximate result of the actions and inactions of Pease Media and Pease as described herein.

### NINTH CAUSE OF ACTION

#### (Money Had and Received.)

103.    Plaintiffs repeat and reallege each and every allegation pleaded in paragraphs I through 102, inclusive, set forth above, as if the same were set forth fully at length herein.

104.    PINI provided Pease Media with substantial advances in funds, against which Pease Media's commissions were to be credited. If at the end of any accounting period advances exceeded commissions, PINI had the right to demand immediate repayment of the excess advances.

105.    In 2004, Pease Media's advances exceeded its commissions by at least $225,384.10. PINI has legal title to the amounts refunded.

106.    PINI timely demanded repayment of the excess advances. Pease Media refused to repay the excess advances. Therefore, Pease Media has received money belonging to Plaintiff PINI, and has benefited from receipt and retention of that money.

107.    Under the principles of equity and good conscience, Pease Media should not be permitted to keep the money.

108.    Plaintiffs have been damaged by Pease Media's unlawful act in retaining the excess advances in an amount in excess of the Court's minimum jurisdictional limit.

## TENTH CAUSE OF ACTION

### (Unfair Competition)

109.    Plaintiffs repeat and reallege each and every allegation pleaded in paragraphs 1 through 108, inclusive, set forth above, as if the same were set forth fully at length herein.

110.    Defendants received confidential and proprietary information from PINI regarding Thomas' business, such as confidential and proprietary information concerning Thomas advertisers and confidential and proprietary Thomas selling aids.

111.    In the License Agreement, Pease Media acknowledged and agreed that such information constituted trade secrets of PINI and Thomas. Pease Media agreed to keep

confidential Plaintiffs' trade secret information, acknowledged that it remained the property of Plaintiffs and agreed to use it solely and exclusively in furtherance of Plaintiffs' business.

112.    However, Defendants misappropriated Plaintiffs' trade secret information, despite their knowledge of the confidential nature of the information, to solicit and obtain customers for its competing internet business TopSpot, and to convince longstanding customers of Plaintiffs to cease advertising with Thomas or substantially reduce their advertising with Thomas. Among other uses, Pease Media used PINI's and Thomas' information about Thomas customers and marketing research information in the promotional materials for Pease Media's competing business.

113.    Defendants have retained Plaintiffs' trade secret information and used it to further their own business interests, in unfair competition with Plaintiffs.

114.    Plaintiffs have no adequate remedy at law.

115.    Defendants have committed said wrongful acts knowingly, willfully, and in reckless disregard of Plaintiffs' rights, and therefore Plaintiffs are entitled to an award of punitive damages.

## ELEVENTH CAUSE OF ACTION

### (Misappropriation of Trade Secrets)

116.    Plaintiffs repeat and reallege each and every allegation pleaded in paragraphs 1 through 115, inclusive, set forth above, as if the same were set forth fully at length herein.

117.    Defendants received confidential and proprietary information from PINI regarding Thomas' business such as confidential and proprietary information concerning Thomas advertisers and confidential and proprietary Thomas selling aids.

118.   In the License Agreement, Pease Media acknowledged and agreed that such information constituted trade secrets of PINI and Thomas. Pease Media agreed to keep confidential Plaintiffs' trade secret information, acknowledged that it remained the property of Plaintiffs and agreed to use it solely and exclusively in furtherance of Plaintiffs' business.

119.   However, Defendants misappropriated Plaintiffs' trade secret information, despite their knowledge of the confidential nature of the information, to solicit and obtain customers for its competing internet business TopSpot, and to convince longstanding customers of Plaintiffs to cease advertising with Thomas or substantially reduce their advertising with Thomas. Among other uses, Pease Media used PINI's and Thomas' information about Thomas customers and marketing research information in the promotional materials for Pease Media's competing business.

120.   Plaintiffs have no adequate remedy at law.

121.   Defendants have committed said wrongful acts knowingly, willfully, and in reckless disregard of PINI's rights, and therefore PINI is entitled to an award of punitive damages.

<u>**REQUEST FOR PRELIMINARY INJUNCTION**</u>

122.   Plaintiffs repeat and reallege each and every allegation pleaded in paragraphs 1 through 121, inclusive, set forth above, as if the same were set forth fully at length herein.

123.   The License Agreement is unambiguous and is capable of being construed and enforced by the Court as a matter of law.

124.   Defendants' acts and omissions described above constitute, inter alia, misappropriation of trade secrets, breaches of the License Agreement and of Defendants'

fiduciary duty to Plaintiffs. Accordingly, Plaintiffs have a probable right to the relief it seeks upon final hearing.

125.    Plaintiffs have been, and will continue to be, damaged and injured by the loss of advertisers, loss of goodwill, disruption of business, and misappropriation of Plaintiffs' confidential information.

126.    The harm to Plaintiffs is continuing and ongoing, and Plaintiffs will, in all likelihood, continue to lose clients and experience further injury to its goodwill and misappropriation of its confidential information unless Defendants are enjoined from continuing to violate the License Agreement.

127.    Plaintiffs will suffer irreparable harm, including but not limited to costs, delay, and the disruption of its business, and the misappropriation of its confidential information, if Defendants are not enjoined from continuing to violate the License Agreement.

128.    Plaintiffs have no adequate remedy at law. Among other things, Defendants have or had in their possession Plaintiffs' confidential information, such as the market research and other identifying information pertaining to Plaintiffs' customer base, which Defendants misappropriated in violation of their express obligations under the Agreement and from whom Defendants have wrongfully solicited business and is continuing to solicit business. Defendants' conduct, if not enjoined, will render Plaintiffs' confidential information valueless and will damage both Plaintiffs' goodwill with its customers and its business reputation. The damages to Plaintiffs from these injuries are impossible to fully calculate.

129.    Also, Defendants' conduct threatens irreparable injury to Plaintiffs' confidential and proprietary selling aids, in which Plaintiffs have a property interest.

- 22 -

130.    The threatened harm to Plaintiffs from Defendants' conduct outweighs any harm that injunctive relief would cause Defendants, and the requested injunctive relief is in the public interest.

131.    Plaintiffs are willing to post a necessary bond.

132.    Plaintiffs therefore request that this Court enter a preliminary injunction in the form to be provided and that such injunction remain in full force and effect pending the final trial on the merits of this action.  Specifically, Plaintiffs request that the Court enter a preliminary injunction enjoining Defendants from directly or indirectly using Plaintiffs' confidential materials, including its proprietary selling aids, for soliciting and obtaining customers for its competing internet business and from contacting longstanding customers of Plaintiffs in an effort to convince them to cease or reduce their advertising with Plaintiffs.

## REQUEST FOR PERMANENT INJUNCTION

133.    Plaintiffs ask the Court to enter a permanent injunction against Defendants following a trial on the merits.

## CONDITIONS PRECEDENT

134.    All conditions precedent have been performed or have occurred.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that Defendants be cited to appear and answer herein, that this Court grant Plaintiffs a preliminary and permanent injunction barring Defendants from making use of Plaintiffs' trade secrets; and that upon final hearing, Plaintiffs have and recover judgment against Defendants for all actual and consequential damages in excess of the minimum jurisdictional limits of this Court arising from the actions described herein, plus exemplary damages against Defendants, plus reasonable and necessary attorney's fees, pre- and post-judgment interest as allowed by law, costs of court,

and for such other and further relief, both general and special, at law and in equity, as the Court

shall deem just and proper and to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

JACKSON WALKER L.L.P.
1401 McKinney, Suite 1900
Houston, TX 77010
(713) 752-4200
(713) 752-4221 - Fax
Email: cbabcock@jw.com

By: _____
Charles L. Babcock
State Bar No. 01479500
Cedric D. Scott
State Bar No. 24013474

OF COUNSEL:

SATTERLEE STEPHENS BURKE &
BURKE LLP
James F. Rittinger
Thomas J. Cahill
Walter Saurack
230 Park Avenue, Suite 1130
New York, NY 10169
Telephone: (212) 818-9200
Facsimile: (305) 379-3428

ATTORNEYS FOR PLAINTIFFS THOMAS
INDUSTRIAL NETWORK, INC. AND
PRODUCT INFORMATION NETWORK,
INC.

4197707v.1